Thank you, Your Honor. Yes, my name is Leonard Fellman. It's good to be here, and I'd like to introduce my colleagues, Kevin Sullivan, with Sullivan and Thorson, and Jason Morgan of Stoll Reeves, and we are the counsel for Sea Hawk Seafoods and the Non-AFA Processors Association in this case. I understand I need to keep track of my own time, but I'd like to reserve, if I can, three minutes for rebuttal. What I'd like to start with is by discussing, and I hope clarifying to some extent, the failure to act claim that's been asserted in this case by Sea Hawk Seafoods. Specifically, that duty to act was. Sullivan Thank you, Your Honor. That's exactly where I wanted to start, and I think that is... Gutierrez All of them were simpatico here. Sullivan And there is, I think, some lack of clarity in the briefing on those issues, so I'm glad that you asked that question. Gutierrez Oh, we're simpatico on that then, too. Morgan Now let's hear the answer. Gutierrez Well, I think that's also a very good question, but I don't think it's a question that any of us has to grapple with. Because we're not asking this Court to implement any AFA regulations. Sullivan Well, first we have to determine whether or not there is a recognizable duty. And so I think we do have to grapple with that. Gutierrez And that was Judge Callahan's question. I think the duty flows both through the counsel and through NIPS. As far as the counsel goes, the section of the AFA that I just referenced indicates that North Pacific counsel shall recommend such regulations that would protect these non-AFA processors. And then that very same section of the AFA then gives the counsel certain oversight responsibility. If you look at the record, particularly the 2001 announcement of the regulations, there's an indication there that the counsel took no action under Section 21B. Did they consider the request and decide that if we permit trawlers who are fishing in Alaska state waters for salmon to deliver their fish to your clients, that that should sufficiently ameliorate the concern? And we're not going to go any further than that. Did I misunderstand the record in that regard? Well, what I would point out, Your Honor, is that if you look at the 2002 regulations, there isn't a single reference at all to Section 211C1B of the AFA. Well, that's not the question I asked you. The question is, doesn't the record establish that there was some, I'll call it, offset in connection with fishing in Alaska state waters that was considered by the counsel in responding to your client's request for help? When I look at the 2001 promulgation, what I see is that the counsel thought that other things that it was doing actually, what it thought was that if it enacted the sideboards for the non-AFA processors, it could have adverse effects. Carry that forward to NIMS. I'm not sure you've answered my question. Let's take it in a hypothetical. Your clients come to the counsel and say, we're being hurt by the regulations in the Pollock fishery, and we need some economic help to offset that, called the sideboard. And the counsel says, well, what we'll do is we'll allow you to process fish from a different fishery that comes out of other waters, which I presume the counsel does not control, the state fishery. I don't know. But for hypothetical purposes, let's assume it comes from another fishery. And we think that that should help ameliorate the economic harm that is otherwise going to flow. If my hypothetical is correct, hasn't the agency basically looked at the request, decided on what I'll call a middle ground? It didn't give you as much as you wanted, but they gave you something. So how is that characterized as a failure to act? Well, our view, Your Honor, is that the counsel didn't do anything and made it clear that they weren't doing anything, and then they explained that they weren't doing anything because they thought that what would be requested would be managed. Are you talking North Pacific counsel? I am, but I want to get to NIMS. That's what I'm trying to figure. Who is the person? I mean, which specific entity are you talking about? And if it's North Pacific counsel, they're not a defendant in the action anymore. That's right. And so then you're still claiming that you can recover on their failure to act? The complaint is against the Secretary of Commerce and NIMS, and I wanted to get to that because that's a different part of the record. It's at ER 39 through 40, and there, there is a letter from the Commerce Department indicating that they did not believe they had jurisdiction over salmon processors in Prince William Sound. The case that I think the Court should focus on is Massachusetts v. EPA. It's a case that we cite in our opening brief and our reply brief. And this gets, I think, to your question, but also to your question, Judge Palman, which is what is it that we're asking. Massachusetts v. EPA is a case where the EPA concluded that it lacked jurisdiction to control or do anything about greenhouse gas emissions from automobiles. It claimed it lacked jurisdiction. That's what NIMS has done here. And what the Court said was that while the Court can't dictate, and the U.S. Supreme Court and all courts have been very clear on this issue, they can't dictate to an agency what the decision ought to be, but they can dictate to the agency that it has to jump through the right hoops and that it has to jump through those hoops. And so what specifically we're asking this Court to do, which is what the Supreme Court failed to do, is look at the jurisdictional issue. Look at the argument that the counsel, not the counsel, that NIMS has asserted that they lack jurisdiction here. Decide that. And if there is jurisdiction, send the issue back to the Commerce Department to take action. And would granting the petition direct the Department of Commerce to do that? It would direct the Department to exercise the discretion that it has under Section 211C1B to take actions if it were to conclude that the sideboard protections are inadequate to protect the non-EFA processors. So, in essence, it would say to them, you do have jurisdiction over all the fisheries and you have to exercise your discretion. You must do something about it. And that's the response to the government's discretionary function argument. We're not asking this Court to interfere with any of the discretionary functions, but I'm asking them to. I don't want to interrupt you in your answer, but if you want to stick with your game plan, your past three minutes. Thank you, Your Honor. I'll sit down then. Up to you. Two and a half minutes left. Okay. And this is Ms. Anna Katselas. Very good, Your Honor. Thank you. Good morning, and may it please the Court. Anna Katselas for NMS. This is not a failure to act case. This is a challenge to the 2002 regulations, which were clearly promulgated under the Magnuson Act. Well, can't they arguably, weren't the 2002 regulations promulgated under both the Magnuson-Stevens Act and the American Fisheries Act? So why shouldn't we conclude that the 30-day limitation is not applicable because the plaintiff's complaint does not clearly challenge the regulations under the Magnuson-Stevens Act as required by Turtle Island? Well, I think that Turtle Island is directly on point. Judge Callahan, this is almost an identical situation. These regulations, if you read them, they were prompted by the American Fisheries Act. They implement the required and discretionary provisions of that act. The American Fisheries Act mandated sweeping changes to mince management of the BSAI pollock fishery and, to a lesser extent, other fisheries. These are management measures. And the regulations fundamentally, what they are, they implement amendments to fishery management plans. Those are creatures of the Magnuson Act, Your Honor. The process by which they are amended is set out in the Magnuson Act. And MIPS followed that procedure to the letter in this case. And in doing so, afforded a whole other level of public involvement and public process than what you would have under the APA. It's a much more extensive process in the Magnuson Act, and that was followed here. It's plainly the claims, like the claims in Turtle Island, flow from these regulations. Let me ask you the same question, Ms. Gatzell, as I asked Mr. Feldman. Help me draft the opinion. If we were to send this back, would we necessarily declare that the 2002 regulations are arbitrary, capricious, and unreasonable, and therefore unenforceable and set them aside so that the council can, in essence, reconsider them in order to accommodate the concerns of the processors? Well, no, because they're time-barred. Well, forget about that. Let's assume for the sake of argument that I don't buy your 30-day argument. What I'm trying to understand is the scope of the relief that the processors are seeking. If we were to give Mr. Feldman what he wants, what impact would that have on the 2002 regulations? Well, they plainly seek nullification as relief. I think that in this case, because the district court did not even reach, I mean, the briefing on this, it's not been beyond. So I think at this point it would go back to the district court to address whether the regulations are arbitrary and capricious. I think that would be the appropriate thing to do if you find this action isn't time-barred. Your position is that if we grant the relief requested, that it would nullify the 2002 regulations? Well, if ultimately the relief, that is the relief they request, Your Honor. But I think that, you know, for multiple reasons, we haven't even addressed that question yet. I understand, but I don't like to decide cases in a vacuum. I like to have an understanding of what will happen if I rule for one side or another. And because of the fact that the briefing was directed primarily to the jurisdictional issue, I didn't get a very good feel for how the regulations harmed the processors. And it would be helpful for me to know that in order to determine whether this is a legitimate failure-to-act claim or, as you say, simply an attack on the 2002 regulation. Okay. Well, I think that the gist of the dispute here, the plaintiffs are upset. And I think their letter in the excerpts of record really distills what they are concerned about. It's essentially one vessel in Alaskan waters that they would like action taken against. And they do seek nullification of the process. Is this a floating processor that they're concerned about? I believe so, Your Honor. Okay. Yes. And that is what they are concerned about. And they seek nullification of the processor regulations as relief. The thing is that there is not a failure-to-act claim. And I think that to distill this issue for the Court, the seminal case controlling this is SUA, which we cite and discuss in our brief. And the pertinent question for the Court is not whether there's a duty, but whether the statute on which they rely mandates a discrete agency action that is required by law. And if you look at the statute ---- The language says may, right? It says may. I mean, number one, there is no discrete agency action required under either provision. Section 211A, they rely on two specific provisions, provides for the Council to recommend approval by the Secretary, conservation and management measures. AFA Section 211C1B, on which they rely as well, again, provides for the Council to recommend measures. And then provides that if it doesn't or if it recommends measures that the Secretary finds to be inadequate, the Secretary may, by regulation, adopt changes. Neither one of those things requires the agency, which is the defendant, to take any discrete agency action. You look at SUA ---- What you're talking about, is the Council an agency? No. No. And if that ---- and the Council is not a party to this action. So that ---- I'm not ---- I'm having a disconnect there. Sure, Your Honor. This Court could not compel the Council to take action. It is a distinct entity from the agency, and Congress clearly, when it wants to do so, knows how to impose a direct duty on the agency to take an action. It has not done so in either of these provisions. Counsel, I have a question. It's maybe a little to the side, but what is the reason for the 30-day review period? Well, the reason ---- Why is it only 30 days? Well, it's a short limitations period, and I think that it goes to, first of all, Congress selected very broad language in enacting that provision. It's applicable to all regulations promulgated under the Act. And what you have ---- what the Magnuson Act does, it's, among other things, it's the framework for NMFS's management of the fisheries. So you want ---- and when NMFS has a management regime, it's important for it to be in place, for expectations to be settled, and for not ---- for there not to be disruptions, you know, in the middle of a fishing season. So, again, the Magnuson Act is, in addition to providing that short period of review, Your Honor, the Magnuson Act affords a very extensive process for public involvement. It's a whole other layer in addition to the APA. The counsel has to conduct meetings in the regions, the areas which will be affected early on. Their recommended amendments are ---- have to be published in the Federal Register in addition to the regulations themselves. The record in this case, Your Honor, shows that there were 12 meetings plus additional meetings of the counsel and NMFS. So there was ample time for the parties to submit their comments. And even in their complaint, Seahawk alleges that they submitted their concerns to the counsel as early as 1999. There's no reason why they couldn't have brought this action within the 30-day period. Okay, but, I mean, there's a huge history that the briefs don't really discuss on the regulations of the entire industry. Wasn't the purpose behind the American Fisheries Act to try and ameliorate some of the harm that had flowed from the restrictions imposed under the Magnuson Act? Certainly, Your Honor. Certainly, that is the case. One of the harms was that shore-based processors were suffering economically. And so Congress basically directed the Secretary to take action to ameliorate those. But you have to look at the precise language, Your Honor. Congress didn't mandate the Secretary to take action in this instance. It simply did not do so. The language of the statute could not be more clear. It directed the counsel to make recommendations. And if it didn't, or if it recommended inadequate ones, it allowed, excuse me, the Secretary to take action. It's very clear language. Let me just ask you a hypothetical along those lines. If we were to, for hypothetical purposes, if we were to determine that the claim for relief that they're making alleging that North Pacific Council failed to act was properly before the district court, do you concede that this claim would then be timely under the APA Six-Year Statute of Limitation? Oh, I'm sorry. If they alleged a failure-to-act claim? Yes. If we determined that. That it would be, that it's not subject. Well, I think that, Your Honor, that would be correct because the Magnuson Act limitation period applies to regulations promulgated under the Act. But this is a challenge to regulations. And the Court certainly has the power and the authority to determine what the success They're trying to do by indirection, but they can't do by direction. Absolutely. But I'm just, I'm taking from their perspective, if we were to determine what they're alleging, then that would be the six-year, this would fall within the six-year. You're not conceding that, I understand. Right. But the six-year would apply if we were to find that they had alleged and that the district court, you know, properly before the district court. I think that would be correct, Your Honor. Okay. The 706-1 claim, a failure-to-act claim, is an APA claim that wouldn't fall within, it's not a challenge to regulations promulgated under the Magnuson Act. So I think that is a different scenario. I think that I'm not. Your time is up unless a member of the panel. Are there any other questions? Does the question. Thank you. Okay. Mr. Feldman. I'd like to pick up where opposing counsel ended, which is that I think it's conceded in this case that if there is a viable failure-to-act claim, it is not subject to the 30-day limitations period in the Magnuson-Stevens Act. The only question is whether there is, in fact, a viable failure-to-act claim. And the issue here is the use of the word may in the American Fisheries Act. What kind of precedent is there as to when you can have a viable failure-to-act claim relating to permissive language like may? There are three cases that we would rely on, Your Honor. One is the Massachusetts v. EPA cases, which is where, of course, the EPA claimed that it could not take discretionary action because it lacked jurisdiction. And the court reviewed the jurisdictional objection, didn't tell the agency what to do, but said you have to do something. Bennett v. Speer and our Children's Earth Foundation are the two other cases that we cite. One of those is an ESA case, and I think the other is a NEPA case. And what those cases say is that, again, courts can't tell agencies what decisions they ought to reach, but if the statute requires actions, it requires an agency to jump through certain hoops, and the agency doesn't jump through those hoops, or here doesn't jump through any hoops at all, courts can tell the agency that it has to take the required actions without getting into the discretionary functions of the agency. On the other claims, because we have alleged not only failure to act claims, but also action claims, the gist of the claim is that there are requirements in the AFA for shoreside processors that require that they stay put after the pollock season, and the agency here has enacted regulations that allow the shoreside processors to move to Prince William Sound. Does that come back to the regulations? It does come back to the regulations. Why isn't a challenge to the regulations under the 30-day limit? Because if you look at Section 211C1B, there's no reference there to the Magnuson-Stevens Act. If you look at some of the other AFA regulations, like the ones dealing with crabs and ground fish, Congress made clear that those regulations ought to be implemented through the But the cases like Japan Whaling, for example, that articulate the standard for precluding APA review make it very clear that what matters is congressional intent to foreclose APA review, and it has to be clear and compelling. And there's nothing in Section 211C1B of the AFA that would indicate that as to those regulations that the Magnuson-Stevens Act has any applicability at all. So in the absence of congressional intent, the APA procedures are still available and the six-year statute of limitations applies. And if I could, Your Honor, Judge Gould, you asked about the policy, the purpose. The purpose of the Magnuson-Stevens Act is to regulate fishing. What kind of hooks do you use? What kind of equipment do you use? How long is the season? It makes perfect sense to have a 30-day statute of limitations because those issues have to be resolved before the fishing season. Well, it's not quite that simple. I mean, the problem that we have is we have shore-based processors and we have floating processors, and the floating processors have certain mobility advantages that the shore-side processors do not. So the regulations do more than regulate hooks, do they not? The fishery management plans do more than regulate hooks, but the AFA doesn't regulate hooks. The AFA is about competitive harm. But the competitive harm to your clients are floating processors. And that's correct. And the competitive harm wasn't clear within 30 days of the 2002 regulations. The competitive harm, like any antitrust claim, I guess, became clear over time. But if the challenge is to the fact that the shore-side processors are not permitted to, what, relocate to other plants that are closer to the other? Well, that they are permitted. They are. Isn't that the same as saying to a floating processor, you either can or cannot process fish from a particular fishery? I mean, one way to do it would simply, I don't know which vessel we're talking about. Is it the Ocean Phoenix or something? Arctic Enterprise. Arctic Enterprise. We're saying the Arctic Enterprise, you can't move from this particular fishery to another when the season is. That's what they want, right? Correct. Okay. And that has to be done through the Magnuson-Steven Act regulation. Your Honor, there's a definition of shore-side processors in the AFA, and it makes very specific reference to a single geographic location. And so the AFA challenge here, Seahawk Seafoods is challenging regulations that were mandated by the AFA and exist only because of the AFA. That wasn't the case in Turtle Island. That is the case here. So there are two sets of challenges here. On the failure to act claim, we're simply asking that the issue be remanded to the district court so it can decide the jurisdictional issue and determine whether that needs to be sent back to NIMS. On the action claim, we're prepared to submit briefing in the district court showing that the definitions relating to shore-side processors are unlawful under the AFA. And if the district court agrees, then those regulations would be nullified. But, you know, we're here on a 12v6 motion. I think there's some work that can be done in the district court to clean up the complaint so that the issues that we've been talking about are more clear, and we'd like the opportunity to do that. Thank you. Okay. Thank you. We went a little bit over the time, Ms. Getzels. We don't want to be unfair to the Department of Justice. So if you feel you need a minute, we'd let you respond. But otherwise, there's... One very short point. The AFA, the specific subtitle at issue here, defines the North Pacific Council as the council established under the Magnuson Act. And then in the provisions at issue here, directs it to recommend conservation and management measures. Those are Magnuson Act terms. And it makes no sense that Congress would have intended the agency to implement certain provisions through the Magnuson Act and others not through the Magnuson Act. These are management measures. That's what the AFA is about. And it's logical and sensible, and the only real for it to go, the only way for the agency to do it is through the Magnuson Act. Thank you, Your Honors. Thank you. We appreciate Mr. Feldman's argument and Ms. Getzels' argument. So that case shall be submitted. The next case on our calendar for argument is the case of Gordon v. Virtue Mondo, which I don't know if I'm pronouncing that right. But that case is set.
judges: Gould, Tallman, Callahan